**MORGAN, LEWIS & BOCKIUS LLP**
(Pennsylvania Limited Liability Partnership)
Brandon J. Brigham (NJ ID # 02235-2009)
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
brandon.brigham@morganlewis.com

*Attorney For Plaintiff Kenric Steel, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| KENRIC STEEL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, *et al.*, <br><br> Defendants. | **CIVIL ACTION NO.** <br> **1:24-cv-09221-KMW-SAK** <br><br> **PLAINTIFF'S COMBINED REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> **Motion Day: September 2, 2025** <br><br> **Oral Argument Requested** <br><br> **(Document Electronically Filed)** |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 1

    A.   Kenric Steel Has Proven Its Claims ....................................................................... 1

        1.   Kenric Steel Has Proven That Review Commission ALJs and
            Members of the Review Commission Are Unconstitutionally
            Insulated from Removal ............................................................................. 1

        2.   Kenric Steel Has Proven Review Commission ALJs Are
            Unconstitutionally Appointed .................................................................... 5

        3.   The ALJ'S Adjudication of the Citation Without a Jury Trial
            Violates the Seventh Amendment and Article III ...................................... 8

        4.   Kenric Steel Has Proven the Solicitor of Labor's Unsupervised
            Prosecution of Kenric Steel Violates the OSH Act ................................. 10

    B.   Kenric Steel Satisfies the Other Requirements for Injunctive Relief. ................. 13

III.   CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Atkins v. CGI Techs. & Sols., Inc.*,
 339 F. Supp. 3d 619 (E.D. Ky. 2018) ..................................................................................12

*Atlas Roofing Co. v. Occup'l Safety & Health Review Comm'n*,
 430 U.S. 442 (1977)..............................................................................................................9

*Axalta Coating Systems LLC v. Federal Aviation Admin.*,
 No. 23-2376, 2025 WL 1934352 (3rd Cir. 2025)..........................................................3, 9, 10

*Axon Enterprise, Inc. v. FTC*,
 598 U.S. 175 (2023)...................................................................................................... passim

*Ayotte v. Planned Parenthood of N. New Eng.*,
 546 U.S. 320 (2006)..............................................................................................................4

*Bank of La. v. FDIC*,
 919 F.3d 916 (5th Cir. 2019) ................................................................................................5

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*,
 17 F.4th 604 (5th Cir. 2021) ..............................................................................................14

*Burnap v. United States*,
 252 U.S. 512 (1920)..............................................................................................................7

*Butz v. Economou*,
 438 U.S. 478 (1978)..............................................................................................................4

*CFPB v. National Collegiate Master Student Loan Trust*,
 96 F.4th 599 (3d Cir. 2024) ..................................................................................................3

*Collins v. Yellen*,
 594 U.S. 220 (2021)........................................................................................................2, 14

*Danvers Motor Co. v. Ford Motor Co.*,
 432 F.3d 286 (3d Cir. 2005)................................................................................................11

*Dep't of Educ. v. Brown*,
 600 U.S. 551 (2023)............................................................................................................12

*Elrod v. Burns*,
 427 U.S. 347 (1976)............................................................................................................13

ii

*Energy Transfer, LP v. NLR B*,
  742 F. Supp. 3d 755 (S.D. Tex. 2024) .................................................................................2, 14

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
  561 U.S. 477 (2010).................................................................................................2, 5, 6, 7

*Freytag v. Commissioner*,
  501 U.S. 868 (1991)................................................................................................................6, 7

*Island Creek Coal Co. v. Wilkerson*,
  910 F.3d 254 (6th Cir. 2018) ...............................................................................................5

*Jones Bros., Inc. v. Sec'y of Lab.*,
  898 F.3d 669 (6th Cir. 2018) ...............................................................................................5

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016)...............................................................................................14

*Lowell Sun Co. v. Fleming*,
  120 F.2d 213 (1st Cir. 1941)...............................................................................................13

*Lucia v. Sec. Exch. Comm'n*,
  585 U.S. 237 (2018)...............................................................................................3, 4, 5, 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...............................................................................................................11

*Marks v. Cent. Intel. Agency*,
  590 F.2d 997 (D.C. Cir. 1978)...............................................................................................13

*Martin v. Occupational Safety & Health Rev. Comm'n*,
  499 U.S. 144 (1991)...............................................................................................................5, 7

*N.J. Payphone Ass'n v. Town of W. N.Y.*,
  299 F.3d 235 (3d Cir. 2002)...............................................................................................12

*NLRB. v. Starbucks Corp.*,
  125 F.4th 78 (3d Cir. 2024) ...............................................................................................3

*Ramspeck v. Federal Trial Examiners Conference*,
  345 U.S. 128 (1953)...............................................................................................................4

*Shields v. Zuccarini*,
  254 F.3d 476 (3d Cir. 2001)...............................................................................................13

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)...............................................................................................................8, 9

*Township of Bordentown, New Jersey v. FERC,*
  903 F.3d 234 (3d Cir. 2018).....................................................................................................12

*VHS Acquisition Subsidiary No. 7 v. NLRB,*
  759 F. Supp. 3d 88 (D.D.C. 2024) ............................................................................................3

## STATUTES & OTHER AUTHORITIES

5 U.S.C. § 702.........................................................................................................................10

5 U.S.C. § 1202.....................................................................................................................2, 4

5 U.S.C. § 7521.........................................................................................................................2

29 U.S.C. § 661.................................................................................................................1, 2, 6

29 U.S.C. § 663...................................................................................................................10, 12

29 U.S.C. § 666.......................................................................................................................12

U.S. Const. art. II, § 2 ..............................................................................................................5

## I.    INTRODUCTION

In its opening brief, Kenric Steel demonstrated that the ongoing administrative proceedings against it under the OSH Act suffer from numerous statutory and constitutional defects.  In response, the government either admits or fails to address several of the bases for Kenric Steel's claims.  The government does not contend that the removal restrictions for Review Commissioners or Review Commission ALJs are constitutional.  And the government does not argue that the OSHRC Chairperson, the only one with statutory responsibility for appointing Review Commission ALJs, is a department "Head."  Nor does the government assert that the Attorney General has any oversight over the Secretary's attempt to seek civil penalties against Kenric Steel, as required by the OSH Act.

Instead, the government primarily contends that Kenric Steel's claims must be dismissed due to various alleged procedural deficiencies.  For the reasons discussed below, the government's arguments are meritless, and Kenric Steel is entitled to declaratory and injunctive relief.

## II.    ARGUMENT

### A.    Kenric Steel Has Proven Its Claims

#### 1.    Kenric Steel Has Proven That Review Commission ALJs and Members of the Review Commission Are Unconstitutionally Insulated from Removal

As Kenric Steel demonstrated in its opening brief, both the Review Commissioners and Review Commission ALJs are unconstitutionally insulated from removal.  The Review Commissioners serve six-year terms and may only be removed "for inefficiency, neglect of duty, or malfeasance in office," 29 U.S.C. § 661(b), and Review Commissioners' terms are staggered in two-year increments, *id*.  Review Commission ALJs, for their part, have three different layers of removal protections: (1) the Review Commission may only remove an ALJ "for good cause

1

established and determined by the [MSPB]," 5 U.S.C. § 7521(a); (2) the President may remove

members of the MSPB only for "inefficiency, neglect of duty, or malfeasance in office," 5

U.S.C. § 1202(d); and (3) the President may remove Review Commissioners only for

"inefficiency, neglect of duty, or malfeasance in office," 29 U.S.C. § 661(b). Taken separately

and together, these provisions encroach on the constitutionally required "degree of electoral

accountability" the Framers created in the executive branch. *Collins v. Yellen*, 594 U.S. 220, 252

(2021).

    In response, the government does not contend that these removal restrictions are

constitutional. Rather, it argues, for various reasons, that Kenric Steel cannot challenge these

restrictions. Each of these contentions lack merit.

    First, the government claims that Kenric Steel must show that the impermissible

insulation provisions "inflict[ed] compensable harm." Defs.' Br. at 9 (quoting *Collins*, 594 U.S.

at 259). But *Collins* involved a party seeking to void past agency action. Here, by contrast,

Kenric Steel seeks declaratory and injunctive relief for *ongoing* agency proceedings. As the

Supreme Court recognized in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 190–96 (2023), being

subject to an unconstitutionally insulated decisionmaker qualifies as a "here-and-now injury."

At a minimum, this is an injury for which Kenric Steel is "entitled to declaratory relief sufficient

to ensure that the [administrative] standards to which they are subject will be enforced only by a

constitutional agency accountable to the Executive." *Free Enterprise Fund v. Public Company

Accounting Oversight Board*, 561 U.S. 477, 513–14 (2010). Thus, Courts have provided

declaratory and preliminary injunctive relief for parties challenging unconstitutionally insulated

decisionmakers in ongoing agency proceedings. *See Energy Transfer, LP v. NLRB*, 742 F.

Supp. 3d 755, 761 (S.D. Tex. 2024) (granting preliminary injunctive relief against ongoing

agency proceeding before unconstitutionally insulated ALJs.); *VHS Acquisition Subsidiary No. 7 v. NLRB*, 759 F. Supp. 3d 88, 100 (D.D.C. 2024) ("the Court need not find that the removal restriction actually inflicted harm to grant declaratory relief.").

The Third Circuit has not held otherwise. Both *CFPB v. National Collegiate Master Student Loan Trust*, 96 F.4th 599, 615 (3d Cir. 2024) and *NLRB. v. Starbucks Corp.*, 125 F.4th 78, 88 (3d Cir. 2024) involved challenges seeking to void past agency action. Indeed, the Court in *Starbucks Corp.* noted that "*Axon* addressed whether the plaintiff must proceed before an agency at all" and left open the extent to which a party could receive relief for agency proceedings that are ongoing. 125 F.4th at 88. Similarly, the Third Circuit's recent decision in *Axalta Coating Systems LLC v. Federal Aviation Administration*, No. 23-2376, 2025 WL 1934352 (3rd Cir. 2025), involved a petition for review from an FAA proceeding that had already taken place.

To the extent the government cites out-of-circuit cases that have required a showing of additional harm even in the context of ongoing agency proceedings, *see* Defs.' Br. at 10 n.4, these cases either preceded the Supreme Court's recognition in *Axon* that being subject to ongoing impermissibly insulated agency decisionmakers causes injury or are unpersuasive. No party could make this particularized showing where the ALJ who will hear its case and make rulings has not been named or sufficiently early in the case as to be before the ALJ acts in a way the parties might speculate the President might find objectionable. *See Lucia v. Sec. Exch. Comm'n*, 585 U.S. 237, 260 (2018) (Breyer, J., concurring in the judgment in part and dissenting in part) (noting that Congress insulated ALJs from removal in part so they would have limited political accountability).

3

Next, the government contends that Kenric Steel is not entitled to injunctive relief because "the proper remedy would be to sever the unconstitutional removal protection." Defs.' Br. at 12. As an initial matter, it is not clear that severance is appropriate here. To determine whether provisions are severable, the Court presumes severability but will not do so if it would "circumvent the intent of the legislature." *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 330 (2006). Contrary to the government's contention, there is no way to "cure the allegedly unconstitutional removal protections for OSHRC commissioners and ALJs in a narrowly tailored fashion." Defs.' Br. at 13. As discussed above, there are three layers of unconstitutional removal protections here: (1) the protection the ALJs receive, (2) the protection the Board Members receive and (3) the Protections the MPSB Members, who are given sole authority to determine whether there is good cause for ALJ removal, receive. In order to cure the constitutional defect, all three of these layers would need to be removed, impacting both the OSH Act as well as 5 U.S.C. § 1202, the statute establishing the MPSB. The government's claim that the Court need only sever two provisions (the provisions insulating the Review Commission Members and MPSB) would not cure the constitutional defect.

There is good reason to think that Congress would not have wanted the enforcement scheme to continue with such a drastic change. "The substantial independence that the Administrative Procedure Act's [APA's] removal protections provide to administrative law judges is a central part of the Act's overall scheme." *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part). This independence arose because there had been "[m]any complaints" that ALJs (then known as hearing examiners) "were mere tools of the agency concerned and subservient to the agency heads," *Ramspeck v. Federal Trial Examiners Conference*, 345 U.S. 128, 131 (1953), and should instead be "independent," *Butz v. Economou*,

4

438 U.S. 478, 513–514 (1978). As to the Review Commission Members, the Supreme Court has recognized that Congress intended the Review Commission to act as an independent "administrative actor." *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 147 (1991). Severing these removal restriction provisions would greatly reduce that independence. As a result, whether Congress's preference would be to have a constitutional Review Commission or a different tribunal—such as in an Article III court—remains unknown. Should the Court determine that the provisions are not severable, then the appropriate remedy would be "broad injunctive relief against the [agency's] continued operations." *Free Enter. Fund*, 561 U.S. at 513. In any event, for the reasons discussed above, Kenric Steel would be entitled to declaratory relief that the removal protection provisions are unconstitutional.

## 2. Kenric Steel Has Proven Review Commission ALJs Are Unconstitutionally Appointed

Review Commission ALJs are also unconstitutionally appointed. The government does not dispute that Review Commission ALJs are inferior Officers subject to the Appointments Clause. Nor could it, because there is no relevant distinction between Review Commission ALJs and ALJs from other agencies that the courts, including the Supreme Court, have held to be inferior Officers. *See Lucia*, 585 U.S. at 248–50; *Bank of La. v. FDIC*, 919 F.3d 916 (5th Cir. 2019); *Jones Bros., Inc. v. Sec'y of Lab.*, 898 F.3d 669 (6th Cir. 2018); *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254 (6th Cir. 2018). Because they are inferior Officers, Review Commission ALJs can only be constitutionally appointed by "the President alone," "the Courts of Law," or one of "the Heads of Departments." U.S. Const. art. II, § 2. All agree that the OSHRC Chairperson is not the "President" or a "Court of Law." Thus, the appointment of Review Commission ALJs could only be constitutional if the Review Commission is a

"Department" and the OSHRC Chairperson is the "Head" of the Department.  Neither of those conditions is satisfied.

As an initial matter, the government does not even contend that the OSHRC Chairperson is the "Head" of a department.  Instead, the government contends that Kenric Steel cannot demonstrate "any harm stemming from this particular appointment" because the ALJ's appointment here "was subsequently ratified by all OSHRC commissioners."  Defs.' Br. at 13.  But the Supreme Court "has held that 'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Lucia*, 585 U.S. at 251 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)).  Kenric Steel's challenge here is timely, and although the Review Commission purported to "ratify" the OSHRC Chairperson's appointments, there was no statutory basis for it to do so.  Instead, the OSH Act states that only the OSHRC Chairperson can "appoint such administrative law judges and other employees as he deems necessary . . . ."  29 U.S.C. § 661(e).  That differs from *Free Enterprise Fund*, where even though appointment power was vested in the Chairman, the full Commission still had the statutory power to approve the Chairman's appointments, and the full Commission's approval satisfied the Appointments Clause.  561 U.S. at 512 n.13.  So, at a minimum, Kenric Steel is entitled to declaratory relief that the OSH Act's ALJ appointment provision is unconstitutional because it does not place appointment power in the hands of the full Review Commission.

But even this would not cure the constitutional defect, because the Review Commission is not properly classified as a Department.  Just like the United States Tax Court in *Freytag*, the Review Commission and its ALJs exercise carefully circumscribed ***adjudicatory*** functions. *Freytag v. Commissioner*, 501 U.S. 868, 882 (1991).  The government points to some language

6

in *Free Enterprise Fund* to suggest that an administrative agency is a department so long as it "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component." 561 U.S. at 511. But the government divorces that language from its context, where the court was dealing with "principal agencies" and the Court did not purport to overrule *Freytag* or prior cases defining the term "Department" not just based on the separateness of the organization but the scope of its authority. *See also Burnap v. United States*, 252 U.S. 512, 515 (1920) ("The term 'head of a department' means . . . the Secretary in charge of a great division of the executive branch of the government . . . .").

Here, the Review Commission does not have the characteristics of a "Department" or "principal agency." The Review Commission exists within the "unusual regulatory structure established by" the OSH Act. *Martin*, 499 U.S. at 151. Thus, although the Review Commission is independent from the Department of Labor, its powers are integrally related to, and in some ways subordinate to, the Secretary of Labor. As an example, the Supreme Court has held that only the Secretary's interpretation of OSHA regulations is due any deference, not the interpretation that the Review Commission gives in any proceeding. *Martin*, 499 U.S. at 147. This places the Review Commission squarely on the *Freytag* side of the line, not on the side of the PCAOB or the SEC. Those agencies have both rulemaking and adjudicatory authority and are not expressly related to another agency as the Review Commission is to the Department of Labor.

Despite this distinction, the government contends that Kenric Steel lacks "legal authority" for drawing this distinction. Defs.' Br. at 14. The government simply ignores *Freytag*'s holding that the Tax Court was not a "Department" (even though it had previously been a part of the executive branch) in part because it had only adjudicatory authority. *See* 501 U.S. at 891 ("The

Tax Court exercises judicial power to the exclusion of any other function.  It is neither advocate nor rulemaker.  As an adjudicative body, it construes statutes passed by Congress and regulations promulgated by the Internal Revenue Service.  It does not make political decisions.").  The government also claims that Kenric Steel's position is undermined by other agencies, like the CIA, which do not have regulatory authority.  Defs.' Br. at 14.  This misstates Kenric Steel's position.  It is not that all principal agencies must have regulatory and enforcement authority, it is that the Review Commission's lack of any other authority except carefully circumscribed adjudicatory authority demonstrates that it is not a "principal" agency in any sense of the word.

Because the OSHRC Chairperson is not the "Head" of any "Department," the plain text of the OSH Act violates the Appointments Clause.

### 3.	The ALJ'S Adjudication of the Citation Without a Jury Trial Violates the Seventh Amendment and Article III

As established in Plaintiff's opening brief, Kenric Steel is being deprived of its right to a jury trial regarding purely legal remedies sought by the Secretary.  The government contends that the Court does not have jurisdiction to hear that claim.  Defs.' Br. at 17.  The government is wrong.

To reach its faulty conclusion that the Court lacks jurisdiction to hear Kenric Steel's constitutional challenges to the Review Commission proceeding, it curiously relies on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) and its progeny.  In fact, the government asserts that "all three *Thunder Basin* factors demonstrate that the statutory review scheme applies and divests this Court of subject matter jurisdiction."  Defs.' Br. at 19.

Yet, the Supreme Court already rejected the government's arguments in *Axon Enterprise, Inc.*, 598 U.S. at 192-3.  There, the Supreme Court held that all three *Thunder Basin* factors weighed in favor of finding a district court had jurisdiction to hear the company's constitutional

8

challenges to the agency's structure.  *Id.* at 195. Regarding the first *Thunder Basin* factor—

whether preclusion of district court jurisdiction would foreclose all meaningful judicial review—

the Supreme Court held that a "proceeding that has already happened cannot be undone" and,

thus, judicial review of "structural constitutional claims would come too late to be meaningful."

*Axon Enter., Inc.*, 598 U.S. at 191.  The Supreme Court concluded that the second factor that

centers on the extent to which a plaintiff's claims are "wholly collateral" also weighed in favor

of Axon Enterprises because it, like Kenric Steel was "challenging the Commissions' power to

proceed at all, rather than actions taken in the agency proceedings."  *Id.* at 192.  And because the

Review Commission has no expertise in adjudicating the separation of power claims that Kenric

Steel raised here, the third *Thunder Basin* factor also weighs in Plaintiff's favor.  *Id.* (holding

SEC and FTC had no expertise in adjudicating constitution claims similar to those raised here).

At bottom, "all three *Thunder Basin* factors thus point in the same direction—toward allowing

[this Court's] review of [Kenric Steel's] claims that the structure, or even existence, of [the

Review Commission] violates the Constitution."  *Id.* at 195.

  Of course, Kenric Steel also disagrees with the government's contention that "Plaintiff's

Seventh Amendment and Article III Claim is Meritless."  But it also recognizes that this Court

cannot overrule *Atlas Roofing Company v. Occupational Safety & Health Review Commission*,

430 U.S. 442 (1977).  Accordingly, Kenric Steel will not belabor its arguments from its opening

brief, or its Amended Complaint, regarding why the Supreme Court should overrule *Atlas

Roofing Company*.  Instead, Kenric Steel cites to and relies upon Judge Bibas's concurring

opinion in *Axalta Coating Sys. LLC*, 2025 WL 1934352 at \*12, where he eloquently explained

that:

> Taking Article III seriously requires restoring the proper default
> rule: "[T]he presumption is in favor of Article III courts." [*Sec. &*

9

> *Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 112, 144 S. Ct. 2117, 2120, 219 L. Ed. 2d 650 (2024)]. The government should thus bear the burden of showing that a new cause of action resembles the closed list of historically recognized public rights. Though we must apply the misguided *Atlas Roofing–Granfinanciera* line of cases today, I hope that the Supreme Court will soon take this accreted jumble and order it into a rule that is coherent, consistent, and true to the Constitution's original safeguards.

*Axalta Coating Sys. LLC*, 2025 WL 1934352, at \*12.  Kenric Steel wholeheartedly agrees.

### 4.    Kenric Steel Has Proven the Solicitor of Labor's Unsupervised Prosecution of Kenric Steel Violates the OSH Act

The prosecution of these claims against Kenric Steel suffers from an additional defect—lack of supervision by the Attorney General.  That supervisory authority is plainly required by the OSH Act, which explicitly states that any civil litigation brought under it "be subject to the direction and control of the Attorney General."  29 U.S.C. § 663.  The government does not, and cannot, contend that the Attorney General has supervised the underlying Review Commission proceeding.  *See* SOF ¶ 15.  Instead, the government raises either phantom procedural concerns or distorts the statutory text.

For its first procedural argument, the government erroneously asserts that any claim for lack of supervision must be dismissed "because the statute does not create a private right of action."  Defs.' Br. at 25.  But Kenric Steel is not asserting that it has a cause of action under the OSH Act itself.  Kenric Steel is asserting an APA claim that the agency is taking action "not in accordance with law," 5 U.S.C. § 706(2)(A), something the statute allows Kenric Steel to challenge as "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  Contrary to the government's contention, Kenric Steel has not "waived" this argument.  Defs.' Br at 26 n.8.  Kenric Steel explicitly pled that "[t]he Court has authority to grant declaratory and injunctive relief . . . under the Administrative

10

Procedure Act, 5 U.S.C. §§ 701–706." Compl. ¶ 78. Therefore, Kenric Steel has sufficiently demonstrated that it has a cause of action.

The government's second procedural argument is that Kenric Steel lacks standing to bring this claim. Defs.' Br. at 27. Specifically, the government contends that Kenric Steel cannot demonstrate an "injury in fact" because, in its view, Kenric Steel has not identified a procedural right impacting its concrete interest. *Id*. Not so. The supervision requirement is a procedural right—it is a requirement governing how proceedings under the OSH Act must be conducted and designed to protect those in proceedings before the Review Commission, tantamount to a "hearing prior to denial of [plaintiff's] license application." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 (1992). The government posits, without any legal support, that "Congress's instruction over the machinations of intra-agency decision making with respect to civil prosecutions is not a form of 'process' afforded to the potential violator of that statute." Defs.' Br. at 27. But, as Kenric Steel pled, "upon review of the matter, the Attorney General might reach a different conclusion about the merits of the citation issued to the company." Compl. ¶ 179.

Moreover, the violation of this procedural right both impacts Kenric Steel's concrete interest and is sufficiently particularized. It impacts Kenric Steel's concrete interest because the underlying Review Commission proceeding forced it to incur monetary damage and reputational damage, among other harms. *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) ("Monetary harm is a classic form of injury-in-fact." (citation omitted)). Additionally, the injury is sufficiently particularized because that proceeding is against Kenric Steel. Kenric Steel is not "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws." *Lujan*, 504

11

U.S. at 573. Kenric Steel is raising a statutory violation regarding an agency proceeding brought against it. Nor must Kenric Steel show "how the supervision it seeks would change how the prosecution was carried out." Defs.' Br. at 27. These are precisely the "standards for redressability and immediacy" relaxed in the procedural rights context. *Dep't of Educ. v. Brown*, 600 U.S. 551, 561–62 (2023) ("the fact that the defendant might well come to the same decision after abiding by the contested procedural requirement does not deprive a plaintiff of standing.").

On the merits, the government first contends that the Attorney General's supervision is unnecessary because it believes the reference to "civil litigation" in 29 U.S.C. § 663 does not include "administrative proceedings." Defs.' Br. at 28. However, "in looking for the meaning of this statutory language, we must look to the statutory context in which that language is used and the broader context of the statute as a whole as well as the language itself." *N.J. Payphone Ass'n v. Town of W. N.Y.*, 299 F.3d 235, 245 (3d Cir. 2002). Here, that context demonstrates that the term "civil litigation" in 29 U.S.C. § 663 include Review Commission proceedings. Specifically, the penalties the Secretary seeks from Kenric Steel are referred to as "civil penalties." 29 U.S.C. § 666. Because this is a proceeding to exact a "civil penalty," and the statute does not refer to any other type of proceeding, any administrative proceeding must be included in the term "civil litigation" used in 29 U.S.C. § 666. So, while the term "civil litigation" or "civil action" can be restricted to court actions in some contexts, *see, e.g.*, *Township of Bordentown, New Jersey v. FERC*, 903 F.3d 234, 268 (3d Cir. 2018), it can also refer to judicial and administrative proceedings alike, as it does here. *See, e.g.*, *Atkins v. CGI Techs. & Sols., Inc.*, 339 F. Supp. 3d 619, 630 (E.D. Ky. 2018) ("administrative proceedings that are judicial in nature are considered 'state-initiated civil proceedings' for the purpose of determining whether *Younger* abstention applies, even if the case has not yet progressed to state-court at the time of federal review.").

12

Nor does *Lowell Sun Co. v. Fleming*, 120 F.2d 213, 214–15 (1st Cir. 1941), "preclude[] Plaintiff's claim." Defs.' Br. at 30. If anything, *Lowell Sun Co.* supports Kenric Steel because it held that, under similar statutory language, the Attorney General does not have to "participat[e]" in every proceeding. The Attorney General must be able to "exercise those powers in any particular case if he deems that course advisable." *Id.* It is undisputed that here, in part due to continued application of Executive Order 6166, the Attorney General does not currently have the ability to oversee proceedings the Secretary brings before the Review Commission. SOF ¶ 15.

Indeed, the government misconstrues Kenric Steel's contentions regarding Executive Order 6166. That executive order predates the OSH Act by decades. Whatever of the legality of the executive order when it was enacted, it cannot override a statutory requirement Congress passed decades after the order. *See, e.g.*, *Marks v. Cent. Intel. Agency*, 590 F.2d 997, 1003 (D.C. Cir. 1978). Yet, that appears to be what has happened here.

Ultimately, neither the government's procedural nor merits arguments succeed. The continued maintenance of this proceeding against Kenric Steel without the supervision of the Attorney General is unlawful.

## B.    Kenric Steel Satisfies the Other Requirements for Injunctive Relief.

Kenric Steel is entitled to injunctive relief because, along with its success on the merits, Kenric Steel has demonstrated that it will suffer irreparable harm as well as that the balance of the equities and the public interest favor granting injunctive relief. *See Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

As an initial matter, where, as here, a plaintiff alleges deprivation of a constitutional right, this "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In *Axon*, the Supreme Court held that being subjected to unconstitutionally structured agency proceedings, such as these, is a "here-and-now" injury that is "impossible to remedy once

the proceeding is over." 598 U.S. at 191. In other words, the harm is irreparable. Contrary to the government's contention, "vacatur" would not repair the harm. Defs.' Br. at 32. As the Supreme Court held in *Axon*, "[a] proceeding that has already happened cannot be undone," and "[j]udicial review . . . would come too late to be meaningful." 598 U.S. at 191.

The government attempts to cabin *Axon* as "merely" holding "that federal district courts have jurisdiction to hear certain structural constitutional challenges." Defs.' Br. at 32. This attempt to narrow *Axon* makes no sense. Nothing in *Axon* suggests that its view of the "here-and-now injury" of being subject to unconstitutionally structured agency proceedings is somehow only present for jurisdictional purposes. *See Energy Transfer*, 742 F. Supp. at 760–61 (holding that *Axon* supported finding of irreparable harm for preliminary injunction of agency proceedings). The cases relied upon by the government either predate *Axon* or incorrectly cabin *Axon's* holding and require a plaintiff to meet *Collins*'s causal harm standard. Defs.' Br. at 32–33 (citing cases). Application of *Collins* here is incorrect for the reasons stated above. *See* supra at 2-3.

Nor has the government adequately rebutted Kenric Steel's showing that injunctive relief is warranted from a balance of the equities and in the public interest. While Kenric Steel will be irreparably harmed from being required to participate in an unconstitutionally structured agency proceeding, the government will suffer no cognizable harm from halting "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Moreover, "maintaining our constitutional structure" serves the public interest. *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021).

In response, the government concentrates on the public's interest in the enforcement of enacted laws. See Defs.' Br. at 33–34. The Constitution, however, is the supreme enacted law.

14

And the government's other arguments are based on its erroneous view that Kenric Steel's constitutional claims can be "reparable by vacatur." Defs.' Br. at 33. Thus, Kenric Steel has demonstrated that it is entitled to injunctive relief under these factors as well.

## III.   CONCLUSION

For the above reasons, Kenric Steel respectfully requests that the Court enter judgment in its favor and grant the Requested Relief.

MORGAN, LEWIS & BOCKIUS LLP

/s/ Brandon J. Brigham
Brandon J. Brigham, NJ ID # 02235-2009
brandon.brigham@morganlewis.com
2222 Market Street
Philadelphia, PA 19103
Tel: +1.215.963.5000
Fax: +1.215.963.5001

*Attorney for Plaintiff Kenric Steel, LLC*

Dated:  August 4, 2025

## **CERTIFICATE OF SERVICE**

      I hereby certify that I caused a copy of the foregoing documents to be electronically filed and served on the parties via the Court's ECF system.


Dated: August 4, 2025          /s/ Brandon J. Brigham