BRETT A. SHUMATE
Assistant Attorney General, Civil Division
JACQUELINE COLEMAN SNEAD
Assistant Director
SARAH M. SUWANDA
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
(202) 305-3196
sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KENRIC STEEL, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR, *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-09221-KMW-SAK |

**DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.    Plaintiff Is Not Entitled to An Injunction Based on Its Removal Challenges .................... 1

II.   Plaintiff Fails to Establish that the ALJ's Appointment Violated Article II ...................... 5

III.  The Court Lacks Jurisdiction Over Plaintiff's Seventh Amendment Claim ...................... 8

IV.   Plaintiff Has No Plausible Seventh Amendment Claim ................................................... 9

V.    The Labor Solicitor's Prosecution of Plaintiff Does Not Violate the OSH Act ............... 10

    A.    Plaintiff Cannot Establish a Claim Under the APA or the OSH Act .................... 10

    B.    Plaintiff Lacks Article III Standing ......................................................................... 11

    C.    "Civil Litigation" Is Not A Synonym For Administrative Proceedings ................. 12

VI.   Plaintiff Is Not Entitled to Permanent Injunctive Relief ................................................. 14

CONCLUSION .................................................................................................................. 15

## **TABLE OF AUTHORITIES**

### **Cases**

*Alpine Sec. Corp. v. FINRA*,
   121 F.4th 1314 (D.C. Cir. 2024) ................................................................. 2

*Atkins v. CGI Techs. & Sols., Inc.*,
   339 F. Supp. 3d 619 (E.D. Ky. 2018) ....................................................... 12

*Atlas Roofing Co. v. OSHRC*,
   430 U.S. 442 (1977) ................................................................................ 12

*Axalta v. FAA*,
   144 F.4th 467 (3d Cir. 2025) .................................................................. 2, 9

*Axon v. FTC*,
   598 U.S. 175 (2023) .......................................................................... 1, 2, 8

*Blankenship v. FINRA*,
   2024 WL 4043442 (E.D. Pa. Sept. 4, 2024) ............................................. 8

*Blue v. Fremont Inv. & Loan*,
   562 F. Supp. 2d 33 (D.D.C. 2008) ........................................................... 9

*Calcutt v. FDIC*,
   37 F.4th 293 (6th Cir. 2022) .................................................................... 5

*CFPB v. Nat'l Collegiate Master Student Loan Tr.*,
   96 F.4th 559 (3d. Cir. 2024) .................................................................... 2

*Collins v. Yellen*,
   594 U.S. 220 (2021) ....................................................................... 1, 3, 14

*Cortes v. NLRB*,
   2024 WL 1555877 (D.D.C. Apr. 10, 2024) .............................................. 3

*Danvers Motor Co. v. Ford Motor Co.*,
   432 F.3d 286 (3d Cir. 2005) .................................................................. 12

*Energy Transfer, LP v. NLRB*,
   742 F. Supp. 3d 755 (S.D. Tex. 2024) .................................................... 15

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ....................................................................... 1, 3, 6

*Freeman v. Corzine*,
   629 F.3d 146 (3d Cir. 2010) .................................................................. 11

*Freytag v. Comm'r of Internal Rev.*,
  501 U.S. 868 (1991) .............................................................................. 5, 6, 7

*Gentile v. SEC*,
  974 F.3d 311 (3d Cir. 2020) ...............................................................................11

*Heckler v. Chaney*,
  470 U.S. 821 (1985)...............................................................................11

*Leachco, Inc. v. CPSC*,
  103 F.4th 748 (10th Cir. 2024)...................................................... 3, 5, 14

*League of Women Voters v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016)................................................................. 15

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,
  503 F.3d 217 (3d Cir. 2007) ................................................................. 9

*Logic Tech. Dev. LLC v. FDA*,
  84 F.4th 537 (3d Cir. 2023) ...............................................................11

*Lowell v. Fleming*,
  120 F.2d 213 (1st Cir. 1941) ................................................................ 13

*Lucia v. SEC*,
  585 U.S. 237 (2018)............................................................................ 4, 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...............................................................................11

*Martin v. OSHRC*,
  499 U.S. 144 (1991) ............................................................................. 7

*Millennia Hous. Mgmt. v. HUD*,
  2025 WL 1222589 (N.D. Ohio Apr. 28, 2025) ........................................ 8

*Nexstar Media, Inc. Grp. v. NLRB*,
  746 F. Supp. 3d 464 (N.D. Ohio 2024)................................................. 8

*NLRB v. Starbucks Corp.*,
  125 F.4th 78 (3d Cir. 2024)............................................................. 2, 5

*Seila Law LLC v. CFPB*,
  591 U.S. 197 ........................................................................................ 3, 4

*Seila Law LLC*,
  997 F.3d 837 (9th Cir. 2021)................................................................. 4

*Shields v. Zuccarini,*
   254 F.3d 476 (3d Cir. 2001) ............................................................ 14, 15

*Space Exploration Tech. Corp. v. NLRB,*
   2025 WL 2396748 (5th Cir. Aug. 19, 2025) ................................... 5, 15

*Twp. of Bordentown v. FERC,*
   903 F.3d 234 (3d Cir. 2018) ................................................................ 12

*Walmart, Inc. v. Chief Admin. L. Judge,*
   144 F.4th 1315 (11th Cir. 2025) ....................................................... 3, 5

*YAPP USA Auto. Sys., Inc. v. NLRB,*
   2024 WL 4489598 (6th Cir. Oct. 13, 2024) ......................................... 3

## Constitution

U.S. Const. art. II ........................................................................ *passim*

U.S. Const. art. III ....................................................................... *passim*

## Statutes

5 U.S.C. § 701(a)(2) ............................................................................ 11

5 U.S.C. § 704 ..................................................................................... 10

5 U.S.C. § 7521 ..................................................................................... 4

29 U.S.C. § 655(f) ............................................................................... 13

29 U.S.C. § 659(c) ........................................................................... 7, 13

29 U.S.C. § 661(b) ................................................................................ 4

29 U.S.C. § 661(f) ................................................................................ 7

29 U.S.C. § 661(j) ........................................................................... 7, 10

29 U.S.C. § 663 .................................................................................. 13

29 U.S.C. § 666(e) .............................................................................. 12

29 U.S.C. § 666(l) ............................................................................... 13

29 U.S.C. § 677 .................................................................................... 3

29 U.S.C. § 204(b) .............................................................................. 14

iv

**<u>Other Authorities</u>**

CIA, *What is CIA?*, https://perma.cc/5UNZ-54U4 ......................................................................... 7

MOU Between the U.S. Departments of Labor and Justice on Criminal Prosecutions of Worker
　　Safety Laws (Dec. 17, 2015), https://perma.cc/DE8P-AZ9Y .................................................... 13

## INTRODUCTION

Plaintiff's reply only confirms that summary judgment should be entered for Defendants. To begin, Plaintiff has not established that the challenged removal protections actually caused any compensable harm to Plaintiff, as required under Collins v. Yellen, 594 U.S. 220 (2021). And neither *Axon v. FTC*, 598 U.S. 175 (2023), nor the Third Circuit's recent removal decisions compel a different result. Plaintiff's challenge to the Occupational Safety and Health Review Commission's ("OSHRC" or the "Commission") appointment of its administrative law judge ("ALJ") likewise fails, as *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), teaches that OSHRC must be a "Departmen[t]" for purposes of the Appointments Clause because it "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component." Id. at 511. As to the remaining claims, Plaintiff concedes any argument with respect to its Seventh Amendment and Occupational Safety and Health Act (the "OSH Act") claims—leaving it with an unsubstantiated and meritless Administrative Procedure Act ("APA") claim that it lacks standing to assert. At bottom, Plaintiff fails to establish actual success on the merits for any of its claims, let alone any irreparable harm stemming from its structural Article II challenge. Because of those threshold defects, and the balance of equities and the Government's interest in enforcing safety and health protections in workplaces throughout the Nation, the Court should deny Plaintiff's motion and enter judgment for Defendants.

## ARGUMENT

### I.    Plaintiff Is Not Entitled to an Injunction Based on Its Removal Challenges

At the outset, Plaintiff effectively concedes that it has failed to demonstrate compensable harm under *Collins*. Plaintiff does not dispute that it has failed to allege that the President has attempted to remove any OSHRC commissioner or ALJ, or was frustrated from doing so. Defs.'

Opp'n to Pl.'s Mot. for Summ J. & Cross-Mot. to Dismiss or in the Alternative for Summ. J. ("Defs.' Br.") at 9–10, ECF No. 28. And Plaintiff ignores the Third Circuit's decisions in *NLRB v. Starbucks*, 125 F.4th 78 (3d Cir. 2024), *CFPB v. National Collegiate*, 96 F.4th 559 (3d. Cir. 2024), *cert denied*, 145 S. Ct. 984 (2024), and now *Axalta v. FAA*, 144 F.4th 467 (3d Cir. 2025)— which squarely rejected the same speculative harms Plaintiff alleges here. *See Starbucks*, 125 F.4th at 88 (that "ALJ in this case 'might have altered his behavior' if there were closer presidential supervision" "is simply speculation" (citations omitted)); *CFPB*, 96 F.4th at 615 (requiring causal "link" "between the removal provision[s] and [Plaintiff's] case" (citation omitted)); *Axalta*, 144 F.4th at 479–80 (being "made to appear before an ALJ" "cannot provide a basis for granting relief" "[u]nder *Collins* and *Starbucks*"). *See also* Defs.' Br. at 10–11 ("administrative bureaucracy" and lack of "electoral accountability" cannot satisfy *Collins*' causal-link requirement).[1]

Plaintiff seeks to escape that conclusion by arguing that the Supreme Court's decision in *Axon* requires a different result. It does not. *Axon* did not curtail *Collins*' compensable-harm inquiry because *Axon* did not consider the merits of any removal challenge; it merely held that district courts retain jurisdiction over structural, Article II challenges to a pending administrative proceeding. 598 U.S. at 195; *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1336 (D.C. Cir. 2024) ("[*Axon*] does not say that every agency proceeding already underway must immediately be halted because of an asserted constitutional flaw."). The key distinction, as the Supreme Court has

---

[1] Plaintiff contends that no party could satisfy *Collins* where the ALJ "has not been named" or where the case is "sufficiently early" such that no party could speculate whether the President might find the ALJ's conduct objectionable. Pl.'s Combined Reply Br. in Supp. of its Mot. for Summ. J. & Resp. to Defs.' Cross-Mot. for Summ. J. ("Pl.'s Reply") at 3, ECF No. 29. To be sure, the ALJ for this administrative proceeding was assigned on June 17, 2024, well before Plaintiff filed suit before this Court. In any event, Plaintiff's argument only underscores why its removal challenge fails. It "is simply speculation" that "the ALJ in this case might have altered his behavior" in some hypothetical way, rather than a required showing of compensable harm. *Starbucks*, 125 F.4th at 88.

explained, is that a successful challenge to removal restrictions "does not mean that actions taken by such an officer are void *ab initio*" without more. *Collins*, 594 U.S. at 258 n.24. That is because actions taken by a properly appointed official are valid exercises of lawful authority, even if the official enjoys unlawful removal protections. *Id.* at 257–59. Plaintiff does not and cannot explain why a plaintiff who files suit preemptively should be able to enjoin the official from taking that same lawful action. Nor can Plaintiff ignore that the Sixth, Tenth, and Eleventh Circuits (and other courts) have continued to hold that plaintiffs raising a *prospective* removal challenge are not automatically entitled to an injunction of agency action without a showing of compensable harm or a complete lack of severability. *See, e.g.*, *YAPP USA Auto. Sys., Inc. v. NLRB*, 2024 WL 4489598, at *3 (6th Cir. Oct. 13, 2024) (holding that "*Axon* did not overrule *Collins*—or, by extension, *Calcutt*"); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024) (recognizing that "*Collins*' relief analysis applies to both retrospective and prospective relief"), *cert. denied*, 145 S. Ct. 1047 (2025); *Walmart, Inc. v. Chief Admin. L. Judge*, 144 F.4th 1315, 1349 (11th Cir. 2025) (availability of severance foreclosed plaintiffs' injunction request); *Cortes v. NLRB*, 2024 WL 1555877, at *6 (D.D.C. Apr. 10, 2024) (holding that "*Collins* 'applies with equal force regardless of the relief sought'" (citation omitted)), *aff'd*, 145 F.4th 57 (D.C. Cir. 2025).

Indeed, Plaintiff does not meaningfully dispute that, if necessary, the proper remedy for any unconstitutional removal provision would be to declare invalid and sever those unconstitutional portions of the statute. *See, e.g.*, *Free Enter.*, 561 U.S. at 508 ("[W]hen confronting a constitutional flaw in a statute," courts generally "limit the solution to the problem," severing the "problematic portions while leaving the remainder intact." (citation omitted)). That is particularly true with respect to the OSH Act, which includes a severability provision, 29 U.S.C. § 677. *Seila Law LLC v. CFPB*, 591 U.S. 197, 234 (2020) ("When Congress has expressly

provided a severability clause, . . . [w]e will presume that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision . . . unless there is strong evidence that Congress intended otherwise." (citation omitted)).  In *Seila Law*, the Supreme Court rejected the petitioner's request to dismiss the agency's district court suit based on an unconstitutional removal restriction.  *Id.* at 232–33.  The Court held that the removal restriction could be severed, *id.* at 233–38, and the agency's action could proceed, *CFPB v. Seila Law LLC*, 997 F.3d 837, 845–46 (9th Cir. 2021).  Here, severance is straightforward: severing the last sentence of 29 U.S.C. § 661(b) would remove the removal restrictions for OSHRC commissioners, and severing the portion of 5 U.S.C. § 7521 that provides for Merit Systems Protection Board ("MSPB") review of good-cause determinations would eliminate the multiple layers of removal protections for OSHRC ALJs.  Plaintiff mistakenly argues that severance would be in tension with Congress's intent to provide independence to ALJs and agency commissioners. Pl.'s Reply at 4.[2]  But for severance, the "critical question [is] whether Congress would have preferred" a system without removal restrictions "to *no* [*system*] *at all*."  *Seila Law*, 591 U.S. at 236.  That question answers itself.  Any relief—to the extent warranted—should appropriately be limited to the well-established remedy of severance.  *Id.* at 233–38.

Accordingly, Plaintiff has not shown entitlement to an injunction of the proceedings based on its removal challenges when (a) it has not suffered any compensable harm, and (b) the challenged statutory provisions can be severed to permit the proceedings to proceed without the alleged constitutional infirmities.  That conclusion accords with every court of appeals decision to

---

[2] Plaintiff's argument against severance is undercut by its own contention that the challenged removal protections unconstitutionally constrain the President's removal authority under Article II.  In any event, Plaintiff's reliance on Justice Breyer's concurrence in *Lucia v. SEC*, 585 U.S. 237 (2018), does not carry the day, as the Supreme Court majority has repeatedly held for the past fifteen years that relief should be limited to severance.  *See* Defs.' Br. at 12–13.

have addressed the question. *See, e.g.*, *Starbucks*, 125 F.4th at 89 (rejecting removal challenge for lack of compensable harm and remanding to the agency for further proceedings)[3]; *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022) (denying injunctive relief), *rev'd on other grounds*, 598 U.S. 623 (2023); *Leachco*, 103 F.4th at 765 (same); *Walmart*, 144 F.4th at 1348–49 (same).[4]  Put another way, Plaintiff obviously could not overturn a final agency decision based on its lack of compensable harm, *Starbucks*, 125 F.4th at 88–89, and the availability of severance, *Walmart*, 144 F.4th at 1348–49.  Plaintiff is thus not entitled to any greater relief merely because it sued in district court before the proceeding could finish.  The Court should therefore enter judgment for Defendants as to Plaintiff's removal claims.

## II.    Plaintiff Fails to Establish that the ALJ's Appointment Violated Article II

Although the parties agree that Article II vests the appointment of inferior officers in "the President alone, in the Courts of Law, or in the Heads of Departments," U.S. Const. art. II, § 2, cl. 2, Plaintiff's challenge to OSHRC's appointment of ALJs rests on a series of fundamental errors.

To begin, there is no basis to assert that "Department[]" must mean cabinet-level agency, or that *Free Enterprise*'s definition of that term was limited to principal agencies only.  Pl.'s Reply at 7.  In *Free Enterprise*, the majority resolved the meaning of "Department[]" by adopting the

---

[3] The Third Circuit has not endorsed a reading of *Axon* that allows Plaintiff to claim automatic entitlement to injunctive relief merely because it faces ongoing agency proceedings.  *Cf.* Pl.'s Reply at 3.  Nor has it squarely decided whether *Collins* applies prospectively.  *See Starbucks*, 125 F.4th at 88 (noting that the court "need not definitively decide the issue today").  Indeed, while Plaintiff suggests otherwise, the Third Circuit, in declining to answer that question explicitly recognized that "other courts of appeal have declined to distinguish between retrospective and prospective relief when applying *Collins*."  *Id.*

[4] The Fifth Circuit recently affirmed a preliminary injunction based on a removal challenge, but did so explicitly because it could not determine whether the removal restrictions were severable at a preliminary stage.  *Space Exploration Tech. Corp. v. NLRB*, 2025 WL 2396748, at *7 (5th Cir. Aug. 19, 2025).  That reasoning is inapplicable here on the parties' motions for summary judgment, where severance is squarely presented, and Plaintiff seeks permanent relief.

reasoning from Justice Scalia's four-Justice concurrence in *Freytag v. Comm'r of Internal Rev.*, 501 U.S. 868 (1991). *See Free Enter.*, 561 U.S. at 510–11. In so doing, the *Free Enterprise* majority did not limit *Freytag*'s definition of "Department[]" to that of so-called principal agencies. *Id.* at 511. Rather, the Court broadly defined "Department[]" to mean a "freestanding component of the Executive Branch, not subordinate to or contained within any other such component." *Id. See also id.* (noting that Congress recognized the Postmaster General as the "'Hea[d] of [a] Departmen[t]' without the title of Secretary or any role in the President's Cabinet").

Indeed, the *Freytag* concurrence leaves no doubt as to what the *Free Enterprise* majority meant. As Justice Scalia explained, the United States Tax Court—a body with solely adjudicative functions, like OSHRC—qualified as a "Department[]" because it was not a "subdivision of the Department of the Treasury" but "a free-standing, self-contained entity in the Executive Branch, whose Chief Judge is removable by the President." *Freytag*, 501 U.S. at 915 (Scalia, J., concurring). Put differently, no matter what side of the *Freytag* line OSHRC falls, *see* Pl.'s Reply at 7, it is "evident" that the term "Departments" encompasses "all agencies immediately below the President in the organizational structure of the Executive Branch," including "all independent executive establishments," *Freytag*, 501 U.S. at 918–19 (Scalia, J., concurring); *id.* at 920 (The Founders "chose the word 'Departmen[t]'" "not to connote size or function," "but separate organization—a connotation that still endures even in colloquial usage today.").[5]

Plaintiff nevertheless argues that OSHRC's powers are "integrally related to, and in some ways subordinate to, the Secretary of Labor," such that OSHRC cannot be considered a principal agency. Pl.'s Reply at 7. But Plaintiff cannot credibly contend that an Article III court's deference

---

[5] For the same reasons, Plaintiff's after-the-fact clarification that principal agencies exclude agencies with only adjudicatory authority, *see* Pl.'s Reply at 8, likewise fails.

to the Secretary's interpretation of OSHA regulations somehow converts OSHRC into a "subdivision of the Department of [Labor]," *Freytag*, 501 U.S. at 915 (Scalia, J., concurring), while conceding in the same breath that OSHRC is in fact an independent agency, Pl.'s Reply at 7. And in any event, Plaintiff's characterization of OSHRC's purportedly subordinate relationship is factually wrong. OSHRC is not subordinate to the Secretary. On the contrary, OSHRC represents an independent adjudicatory body that is statutorily empowered to *decide* cases brought by the Secretary and to affirm or vacate her citations after an administrative hearing. *See, e.g.*, 29 U.S.C. § 659(c) (authorizing OSHRC to conduct an independent hearing and to "issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief"); *Martin v. OSHRC*, 499 U.S. 144, 155 (1991) ("It is clear that Congress adopted the split-enforcement structure in the OSH Act in order to achieve a greater separation of functions than exists in a conventional unitary agency."). Were that not enough, Plaintiff's ever-evolving definition of principal agencies does not square with the *Freytag* majority's inclusion of the Central Intelligence Agency—which lacks regulatory *and* enforcement authority, and serves only as "an independent source of information" for policymakers, *see* CIA, *What is CIA?*, https://perma.cc/5UNZ-54U4—as a principal agency, 501 U.S. at 887 n.4.

Finally, Plaintiff takes issue with OSHRC's ratification of the ALJ's appointment, claiming that there was no statutory basis for such action. But nothing in the OSH Act precludes ratification by the full Commission. Rather, the statute provides, in relevant part:

> For the purpose of carrying out its functions under this chapter, . . . official action can be taken only on the affirmative vote of at least two members. . . .
>
> [An] administrative law judge appointed *by the Commission* shall hear, and make a determination upon, any proceeding instituted before the Commission. . . .

29 U.S.C. § 661(f), (j) (emphasis added). Taken together, nothing in the OSH Act precludes the

Commission from ratifying the Chair's appointment of ALJs. And even if it did, Plaintiff does not dispute that the appropriate remedy would be to sever the portion of the OSH Act that grants appointment authority to the Chair alone.[6]

### III.   The Court Lacks Jurisdiction Over Plaintiff's Seventh Amendment Claim

Plaintiff does not address Defendants' *Thunder Basin* arguments as to Plaintiff's Seventh Amendment claim but instead regurgitates *Axon*'s *Thunder Basin* analysis as applied to a structural claim under Article II. Pl.'s Reply at 8–9. That imputation misses the mark.

*Axon* narrowly held that district courts may retain jurisdiction over structural challenges to certain independent agencies under Article II. *Axon*, 598 U.S. at 185. It made no pronouncements as to *Jarkesy*-like claims. Consequently, several district courts have held that Seventh Amendment claims, like the one asserted here, do not satisfy the *Thunder Basin* factors because such challenges are wholly distinct from the structural Article II claims in *Axon*. *See, e.g.*, *Blankenship v. FINRA*, 2024 WL 4043442, at *2–3 (E.D. Pa. Sept. 4, 2024) (dismissing for lack of jurisdiction over Seventh Amendment claim under *Thunder Basin*); *Nexstar Media, Inc. Grp. v. NLRB*, 746 F. Supp. 3d 464, 469–73 (N.D. Ohio 2024) (rejecting *Axon*'s applicability to a Seventh Amendment claim and dismissing for lack of jurisdiction); *Millennia Hous. Mgmt. v. HUD*, 2025 WL 1222589, at *7 (N.D. Ohio Apr. 28, 2025) (same).

---

[6] Plaintiff does not dispute that it faces no harm from ALJ Augustine's now-ratified appointment, Pl.'s Reply at 10, and so the Court should dismiss Plaintiff's appointment challenge for lack of standing, Defs.' Br. at 13. Plaintiff instead asserts it is entitled to relief under *Lucia* because it timely challenged the constitutional validity of the ALJ appointment. Pl.'s Reply at 6. But in *Lucia*, the SEC, unlike OSHRC, delegated the appointment of its ALJs to "staff members, rather than the Commission proper." 585 U.S. at 241. Thus, the validity of those *staff* appointments turned on whether SEC ALJs were "officers" under Article II. The Court concluded that they were, rendering those staff appointments void. *Id.* at 251. Only then did the Court address the scope of remedial relief based on the timing of that challenge. *Id.* In other words, *Lucia* does not mean that a timely, pre-enforcement appointment challenge presumptively entitles one to declaratory relief.

Plaintiff fails to address the substance of these arguments and relies on an extension of *Axon* that does not apply. *Compare* Pl.'s Reply at 8–9, *with* Defs.' Br. at 16–19. This Court should follow the growing chorus of district courts and dismiss Count III for lack of jurisdiction.

## IV. Plaintiff Has No Plausible Seventh Amendment Claim

Plaintiff does not contest any of Defendants' arguments as to Plaintiff's meritless Seventh Amendment claim. *See* Pl.'s Reply at 9 (recognizing *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442 (1977) controls). Because of that concession, the Court should adopt Defendants' argument in full, *see* Defs.' Br. at 20–25, and enter judgment for Defendants on that basis, *see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 225 (3d Cir. 2007) ("Waiver is 'the intentional relinquishment or abandonment of a known right.'" (citation omitted)); *Blue v. Fremont Inv. & Loan*, 562 F. Supp. 2d 33, 40 (D.D.C. 2008) ("fail[ure] to address certain arguments" constitutes concession).

Plaintiff nevertheless refers the Court to Judge Bibas's concurring opinion in *Axalta*. Pl.'s Reply at 9. Yet it ignores that the majority opinion—which Judge Bibas *joined* and is binding on this Court—confirms Defendants' arguments.[7] In *Axalta*, the Third Circuit recognized that *Jarkesy* "did not abrogate, the public rights doctrine." 144 F.4th at 475. And it tellingly reaffirmed what *Jarkesy* (and Defendants) have said all along: an administrative adjudication resembling *Atlas Roofing* "does not violate the Seventh Amendment." *Id.*; *see also* Defs.' Br. at 22–23 (explaining that the OSH Act brings no common law soil). Because Plaintiff concedes that *Atlas Roofing*

---

[7] Plaintiff makes no attempt to address the step-one inquiry under *Jarkesy*—whether the Secretary's claim against Plaintiff is equitable in nature. *See* Defs.' Br. at 23–24 (explaining that no Seventh Amendment right attaches because the Secretary's proposed civil penalties and abatement sound in equity, not law). Because Plaintiff has waived this argument, the Court should adopt Defendants' arguments in full. *LeBoon*, 503 F.3d at 225; *Blue*, 562 F. Supp. 2d at 40.

controls, the Court should enter judgment for Defendants as to Count III.

## V.    The Labor Solicitor's Prosecution of Plaintiff Does Not Violate the OSH Act

Whether framed as a statutory claim under the OSH Act or the APA, Plaintiff cannot establish success on the merits or Article III standing as to its supervision claim, *i.e.*, that the Attorney General must direct and control administrative prosecutions. Accordingly, the Court should dismiss Count IV and/or enter judgment for Defendants.

### A.    Plaintiff Cannot Establish a Claim Under the APA or the OSH Act

Although Plaintiff concedes that the OSH Act does not create a cause of action, it asserts (for the first time) that Count IV alleges an APA claim. Pl.'s Reply at 10. That assertion, however, contradicts the operative complaint itself, which alleges only a violation of the OSH Act. *See, e.g.*, First Am. Compl. ("FAC") at 31, ECF No. 21 ("COUNT IV – THE SOLICITOR OF LABOR'S UNSUPERVISED PROSECUTION OF KENRIC STEEL VIOLATES THE OSH ACT"). And Plaintiff's reliance on a generic jurisdiction allegation, *see* FAC ¶ 78, cannot plausibly convert Count IV—which otherwise makes no mention of the APA—into such a claim. But even assuming that it does, Plaintiff does not carry its summary-judgment burden as to that dubious APA claim, as Plaintiff did not meaningfully address the APA in its briefing as it relates to Count IV. *See* Pl.'s Reply at 11 (merely asserting that Plaintiff has "demonstrated that it has a cause of action"). That fatal omission dooms Plaintiff's claim from the start. After all, to prevail on its purported APA claim, Plaintiff would need to establish final agency action, 5 U.S.C. § 704, which it cannot do, because there has been no final action here, *see* 29 U.S.C. § 661(j) (ALJ decision becomes OSHRC final order within thirty days of issuance unless Commission member directs review); *Logic Tech. Dev. LLC v. FDA*, 84 F.4th 537, 551 (3d Cir. 2023) ("Agency action counts as final only if (1) it mark[s] the consummation of the agency's decisionmaking process, and (2) it is one by which

rights or obligations have been determined or from which legal consequences will flow." (cleaned up)), *cert. denied*, 145 S. Ct. 1921 (2025).[8]  The Court should reject Plaintiff's attempt to fabricate a non-pleaded APA claim in reply.

### B.    Plaintiff Lacks Article III Standing

Plaintiff's purported APA claim likewise suffers from yet another fatal defect: failure to establish Article III standing.  Here, Plaintiff contends that it need not establish causation and redressability because the OSH Act's "direction and control" language is tantamount to the procedural requirement of a hearing before denial of a license application.  Pl.'s Reply at 11.  But that analogy makes little sense.  Even if the Attorney General chose to exercise "direction and control" over the prosecutorial decisions made by the Solicitor of Labor, such oversight would not provide a procedural right to Plaintiff.  *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 (1992) (recognizing procedural right where agency was required to issue an environmental impact statement before construction of federal facility).  Plaintiff's attempt to create a procedural safeguard for itself finds no support in the statutory text, which makes clear that Congress merely sought to prescribe how two federal agencies should interact when prosecuting.  29 U.S.C. § 663.

Plaintiff's arguments that its alleged injury is sufficiently concrete and particularized likewise miss the mark.  Because Plaintiff has moved for summary judgment on Count IV, it "cannot rely on mere allegations."  *Freeman v. Corzine*, 629 F.3d 146, 153 (3d Cir. 2010) (cleaned

---

[8] Nor does the Solicitor's decision to prosecute mark the consummation of the agency's decision-making process or determine a specific obligation for the entity subject to prosecution.  Any argument to the contrary runs headlong into Plaintiff's repeated refrain that agency proceedings remain *ongoing*.  Moreover, the Attorney General's prerogative to direct and control civil litigation under the OSH Act is not subject to judicial review under the APA, 5 U.S.C. § 701(a)(2), because such action is committed to agency discretion by law, *see Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Gentile v. SEC*, 974 F.3d 311, 319 (3d Cir. 2020) ("[W]ithout judicially manageable standards, an agency's decision on whether to investigate is a matter committed to agency discretion by law.").

up). Instead, it "must set forth by affidavit or other evidence specific facts demonstrating that [Article III standing] requirements have been met." *Id.* Plaintiff failed to do so, merely alleging, without evidence, that Plaintiff has incurred "monetary" and "reputational damage, among other harms." Pl.'s Reply at 11.[9] That deficiency alone ends the Article III inquiry in Defendants' favor. But even if Plaintiff had provided actual evidence of its alleged harms, any purported harms would be speculative, as Plaintiff concedes that "the Attorney General and Solicitor of Labor might well come to the same decision after abiding by the contested procedural requirement." FAC ¶ 179 (cleaned up); *see also* Defs.' Br. at 26–27.

### C.    "Civil Litigation" Is Not a Synonym for Administrative Proceedings

Plaintiff contends that "civil litigation" under the OSH Act necessarily includes administrative proceedings before OSHRC, because the Secretary seeks "civil penalties" against Plaintiff, and the OSH Act "does not refer to any other type of proceeding" other than "civil litigation." Pl.'s Reply at 12. Those assertions are factually and logically wrong. The OSH Act does not contemplate only "civil litigation," as Plaintiff contends. To the contrary, the statute authorizes civil and criminal penalties for willful violations, 29 U.S.C. § 666(e), which may be criminally prosecuted by the Department of Justice in federal court, after referral and consultation with the Department of Labor, *see* MOU Between the U.S. Departments of Labor and Justice on Criminal Prosecutions of Worker Safety Laws (Dec. 17, 2015), https://perma.cc/DE8P-AZ9Y.[10]

---

[9] Plaintiff cites *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005), to support its injury-in-fact allegation. Pl.'s Reply at 11. The *Danvers* court, however, reviewed the lower court's decision at the motion-to-dismiss stage, where it "accept[ed] as true all material allegations of the complaint and construe[d] them in favor of the plaintiff." 432 F.3d at 288 (citation omitted).
[10] Plaintiff concedes that the Third Circuit has held that "a hearing before an administrative body is not a 'civil action.'" *Twp. of Bordentown v. FERC*, 903 F.3d 234, 268 (3d Cir. 2018); Pl.'s Reply at 12. Yet Plaintiff cites *Atkins*, an out-of-circuit decision, for the proposition that "civil action" or "civil litigation" *could* include administrative proceedings. Pl.'s Reply at 12. *Atkins*, however, is distinguishable, as its analysis was limited to *state* administrative proceedings, and considered such proceedings to be "civil proceedings" solely "for the purpose of determining whether *Younger*

As to Plaintiff's reliance on the Secretary's ability to seek "civil penalties," that statutory authority has no bearing on whether civil litigation is synonymous with administrative adjudication as contemplated by section 14 of the OSH Act, 29 U.S.C. § 663. Rather, the type of proceeding is determined by the forum in which the matter is adjudicated, which Congress was well aware of when it specifically designated the appropriate forum for various actions under the OSH Act. *See, e.g.*, 29 U.S.C. § 655(f) (standards challenge in courts of appeals); *id.* § 657(b) (district court subpoena enforcement); *id.* § 660(a) (appeal of Commission decision to court of appeals); *id.* § 660(b) (petition for enforcement in court of appeals); *id.* § 660(c) (whistleblower suit in district court); *id.* § 662(a), (b) & (d) (imminent danger order in district court); *id.* § 666(l) (recovery of civil penalties in district court). *Cf. id.* § 659(c) (contested citation before OSHRC).

Finally, Plaintiff argues that *Lowell v. Fleming*, 120 F.2d 213 (1st Cir. 1941), supports its reading of the OSH Act, because it is "undisputed" that Executive Order 6166 impairs the Attorney General's ability to oversee the administrative proceedings brought by the Secretary. Pl.'s Reply at 13. Defendants said no such thing.[11] Rather, as Defendants explained, *Lowell* establishes that the same "requirement" in the Fair Labor Standards Act and the OSH Act—litigation "shall be subject to the direction and control of the Attorney General," 29 U.S.C. §§ 204(b), 663—is merely discretionary, *Lowell*, 120 F.2d at 215 (the "subject to the direction and control of " language does "not require that the Attorney General must exercise his power of direction and control in every

___

abstention applies." *Atkins v. CGI Techs. & Sols., Inc.*, 339 F. Supp. 3d 619, 630 (E.D. Ky. 2018). In any event, Plaintiff fails to address more on-point cases and the OSH Act's legislative history, which independently (and collectively) cut the other way. Defs.' Br. at 28–29.

[11] Defendants do not contend that Executive Order 6166 amended the OSH Act. Pl.'s Reply at 13. Executive Order 6166 amended the Organic Act, which allowed for the lawful transfer of the Solicitor of Labor from the Justice Department to the Labor Department. Defs.' Br. at 30–31. That Congress granted the Attorney General discretion to direct and control civil litigation under the OSH Act remains consistent with the working relationship between the Departments as to prosecutions before an Article III court.

litigated case but only that he may exercise those powers in any particular case if he deems that course advisable"). Indeed, the OSH Act's provision that civil litigation remains "subject to" the Attorney General's direction and control is plainly distinct from a requirement that the Attorney General directly supervise *all* civil actions. Thus, even if administrative proceedings were construed to be civil litigation subject to the Attorney General's direction and control, the Attorney General's decision not to exercise it over this particular administrative proceeding neither violates the statute nor injures Plaintiff.

## VI.    Plaintiff Is Not Entitled to Permanent Injunctive Relief

Plaintiff has not established that the permanent injunction factors weigh in favor of relief. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). To begin, Plaintiff's irreparable harm arguments fail for the same reasons they fail to satisfy *Collins*. That is, *Axon* does not stand for the proposition that a "here-and-now injury" satisfies either the irreparable harm or compensable-harm requirements. *See supra* § I. Indeed, as Defendants explained, *Axon*'s holding was purely jurisdictional. And its "here-and-now" language—"made in the context of the [Supreme] Court's jurisdictional *Thunder Basin* analysis"—"does not help [Plaintiff] establish irreparable harm because *Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief." *Leachco*, 103 F.4th at 758–59; *Collins*, 594 U.S. at 258 n.24 (*Seila Law*'s "here-and-now" language "should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction."). Put differently, this Court should "not misunderstand what was said about jurisdiction in *Axon* 'as a holding on a party's entitlement to relief based on an unconstitutional removal provision.'" *Leachco*, 103 F.4th at 759 (citation omitted). To hold otherwise would impermissibly convert *Axon* "into a broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such

constitutional challenges are raised." *Id.*

As a last resort, Plaintiff relies again on *Energy Transfer, LP v. NLRB*, 742 F. Supp. 3d 755, 758 (S.D. Tex. 2024), *aff'd sub nom. Space Expl. Techs. Corp. v. NLRB*, 2025 WL 2396748, an outlier, out-of-circuit decision. Not only was that case wrongly decided, but that decision pertained only to preliminary injunctive relief, *Space Expl. Techs. Corp.*, 2025 WL 2396748, at *7, not permanent injunctive relief—which is what Plaintiff seeks here. At bottom, neither *Energy Transfer* nor *Axon* absolves Plaintiff of its heavy burden of establishing "actual success on the merits" and "irreparabl[e] injur[y]." *Shields*, 254 F.3d at 482.

As to the remaining factors, Plaintiff argues that the Government will suffer no cognizable harm from halting an unlawful agency action. Pl.'s Reply at 14. But Plaintiff errs in relying on the standard (from an out-of-circuit case) for *preliminary* relief.[12] It likewise errs in ignoring the Government and public's interest in ensuring safe and healthful working conditions. *See* Defs.' Br. at 33–34. On balance, nothing in *Axon* undermines well-settled precedent that vacatur and/or severance would remedy the alleged constitutional defect. That is because a mere generalized separation-of-powers violation—which is all Plaintiff has alleged—does not establish irreparable harm or entitlement to permanent injunctive relief.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the First Amended Complaint and/or enter judgment for Defendants.

---

[12] *League of Women Voters v. Newby* is inapposite as the agency action implicated the public's "fundamental political right to vote," which "is preservative of all rights." 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted).

Dated: September 4, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JACQUELINE COLEMAN SNEAD
Assistant Director

*/s/ Sarah M. Suwanda*
SARAH M. SUWANDA
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
(202) 305-3196
sarah.m.suwanda@usdoj.gov

*Counsel for Defendants*

16