**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| KENRIC STEEL, LLC,<br>*Plaintiff*,<br>v.<br>UNITED STATES DEPARTMENT OF LABOR, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, *et al.*,<br>*Defendants.* | HONORABLE KAREN M. WILLIAMS<br>Civil Action<br>No. 24-09221 (KMW-SAK)<br>**OPINION** |
|---|---|

APPEARANCES:

**BRANDON J. BRIGHAM, ESQ.**
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103

*Counsel for Plaintiff Kenric Steel, LLC*

**BRETT A. SHUMATE**
Assistant Attorney General, Civil Division
**JACQUELINE COLEMAN SNEAD**
Assistant Director
**SARAH M. SUWANDA**
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005

*Counsel for Defendants*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Plaintiff Kenric Steel, LLC ("Plaintiff") asks this Court to halt an administrative enforcement proceeding pending before the Occupational Safety and Health Review Commission ("OSHRC" or the "Commission"). Defendant United States Department of Labor, Occupational Safety and Health Administration ("OSHA") inspected Plaintiff's Millville, New Jersey facility and issued citations alleging seven serious and four willful violations of federal workplace-safety standards, with proposed penalties totaling $348,683. Plaintiff timely contested those citations, and the resulting administrative proceeding is assigned to OSHRC Administrative Law Judge Patrick B. Augustine. (Pl.'s Statement of Undisputed Material Facts ("SUMF") ¶¶ 9-14, Dkt. No. 27-3; Defs.' Resp. to SUMF ("RUMF") ¶¶ 9-14, Dkt. No. 28-1.)

Rather than await adjudication of the citations, Plaintiff filed this action seeking declaratory and injunctive relief on four theories. It contends that: (1) statutory restrictions on removal of OSHRC Commissioners violate Article II; (2) OSHRC administrative law judges are both improperly appointed and unconstitutionally insulated from removal; (3) adjudication of OSHA's requested civil penalties by an ALJ, rather than an Article III court and jury, violates Article III and the Seventh Amendment; and (4) the Solicitor of Labor is prosecuting the administrative action in violation of 29 U.S.C. § 663 because the Attorney General is not directing or supervising that prosecution. (First Am. Compl. ("Am. Compl.") ¶¶ 135-185, Dkt. No. 21.)

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 27) and Defendants OSHA, the Secretary of Labor (the "Secretary"), the Solicitor of Labor (the "Solicitor"), OSHRC, the Chair of OSHRC, and and OSHRC ALJ Judge Augustine's (collectively, "Defendants") Cross-Motion to Dismiss and/or for Summary Judgment (Dkt. No.

28). Plaintiff filed a combined reply and opposition to Defendants' Cross-Motion (Dkt. No. 29), and Defendants replied (Dkt. No. 32) with leave of Court pursuant to L.Civ.R. 7.1(h).

The parties' submissions raise substantial questions concerning the constitutional structure of administrative adjudication. But federal courts do not decide constitutional questions unnecessarily. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). Here, that principle has particular force because controlling and persuasive authorities permit resolution of the parties' dispute on narrower grounds. As explained below, Plaintiff has not demonstrated injury caused by the removal restrictions it challenges; Judge Augustine's appointment was ratified by the full Commission years before the proceeding against Plaintiff began; the OSH Act's statutory review scheme channels Plaintiff's Seventh Amendment claim through the administrative process and into a court of appeals; and Plaintiff's statutory claim concerning Attorney General supervision is not presently reviewable under the Administrative Procedure Act ("APA") and, in any event, rests on an interpretation of 29 U.S.C. § 663 that is inconsistent with the text and structure of the OSH Act.

Accordingly, for the reasons that follow, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Cross-Motion is **GRANTED**.

## II. BACKGROUND

### a. The OSH Act's Enforcement and Review Scheme

The Occupational Safety and Health Act of 1970 ("OSH Act"), 29 U.S.C. §§ 651 *et seq.*, divides regulatory and adjudicative functions between the Secretary of Labor and the Commission. The Secretary promulgates occupational safety and health standards, conducts inspections, issues citations, and proposes penalties. 29 U.S.C. §§ 655, 657-659. If an employer does not contest a citation or proposed penalty, it becomes a final order of the Commission. *Id.* § 659(a). If the

employer files a timely notice of contest, however, the Commission must afford an opportunity for a hearing and "issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief." *Id.* § 659(c).

Congress thus adopted what the Supreme Court has called an "unusual regulatory structure" in which enforcement and rulemaking authority rest with the Secretary while adjudicative authority rests with an independent Commission. *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151 (1991). The Third Circuit has similarly described OSHRC's function as "strictly" adjudicatory: its jurisdiction is triggered by a notice of contest, after which it may affirm, modify, or vacate citations and proposed penalties, assess penalties, or direct other appropriate relief. *Marshall v. Sun Petroleum Prods. Co.*, 622 F.2d 1176, 1182-83 (3d Cir. 1980).

The Commission is composed of three members appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 661(a). The statute provides that Commissioners serve six-year terms and states that a member "may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 661(b). The Chairperson is responsible for the Commission's administrative operations and "shall appoint such administrative law judges and other employees as he deems necessary." *Id.* § 661(e). Commission "official action" generally requires the affirmative vote of at least two members. *Id.* § 661(f). The Act charges "[a]n administrative law judge appointed by the Commission" with adjudicating proceedings instituted before the Commission and issue a "report of any such determination which constitutes his final disposition of the proceedings." *Id.* § 661(j).

An ALJ's report becomes the final order of the Commission within thirty days unless a Commission member directs review. *Id.* A person adversely affected or aggrieved by a final

Commission order may petition for review in the appropriate United States court of appeals. *Id.* § 660(a). The Secretary likewise may seek review or enforcement of Commission orders in a court of appeals. *Id.* § 660(b).

**b. The Citation and OSHRC Proceeding**

On or about July 26, 2023, OSHA opened an inspection of Plaintiff's facility at 331 Riverside Drive in Millville, New Jersey. (SUMF ¶ 9; RUMF ¶ 9.) On January 22, 2024, OSHA issued a Citation and Notification of Penalty alleging seven serious and four willful violations and proposing penalties totaling $348,683. (SUMF ¶ 10; RUMF ¶ 10.) Plaintiff timely filed a notice of contest on February 7, 2024. (SUMF ¶ 11; RUMF ¶ 11.)

The Secretary thereafter filed an administrative complaint before OSHRC. The parties disagree only about the filing date: Plaintiff states that the complaint was filed on July 21, 2024, while Defendants point to a certificate of service reflecting electronic filing on July 11, 2024. (SUMF ¶ 13; RUMF ¶ 13; Suwanda Decl. Ex. A, Dkt. No. 28-2.) The discrepancy is immaterial to the motions presently before the Court.

Judge Patrick Augustine is the OSHRC ALJ assigned to the administrative matter. (SUMF ¶ 8; RUMF ¶ 8.) Relevant here, the parties agree that in 2019 the full Commission ratified Judge Augustine's appointment. (SUMF ¶ 9; RUMF ¶ 9.) The March 28, 2019 Commission memorandum reflects that the Commission acted following *Lucia v. SEC*, 585 U.S. 237 (2018), and "ratif[ied] the prior appointments" of the listed OSHRC ALJs, including Judge Augustine. (Brigham Decl. Ex. 2, Dkt. No. 27-1 at 9.)

The administrative proceeding has been stayed on multiple occasions while this federal action remains pending. The record submitted on the cross-motions includes Judge Augustine's

June 26, 2025 order extending the stay for an additional ninety days. (Suwanda Decl. Ex. B, Dkt. No. 28-2.)

**c. The Attorney General's Role in the Underlying Matter**

Plaintiff's fourth claim turns on 29 U.S.C. § 663, which provides that, except for litigation before the Supreme Court, "the Solicitor of Labor may appear for and represent the Secretary in any civil litigation brought under this chapter but all such litigation shall be subject to the direction and control of the Attorney General." The parties agree for purposes of these motions that the Attorney General is not supervising or directing the particular OSHRC action against Plaintiff. (RUMF ¶ 15.) Defendants dispute Plaintiff's broader assertion that the Attorney General never supervises or directs OSH Act litigation before OSHRC. (*Id.*)

## III. LEGAL STANDARD

**a. Rule 12(b)(1)**

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction. A jurisdictional challenge may be facial, in which case the Court considers the allegations of the complaint and draws reasonable inferences in the plaintiff's favor, or factual, in which case the Court may consider evidence outside the pleadings. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). The plaintiff bears the burden of establishing jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

**b. Rule 12(b)(6)**

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded factual allegations as true but need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Id.* In

evaluating a Rule 12(b)(6) motion, the Court may consider the complaint, exhibits attached to it, matters of public record, and undisputedly authentic documents integral to or explicitly relied upon in the complaint. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

**c. Rule 56**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the action under governing law, and a dispute is genuine if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact; once that burden is met, the nonmoving party must identify specific facts and affirmative evidence demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson*, 477 U.S. at 256-57. The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). These principles apply equally where, as here, the parties file cross-motions for summary judgment; each motion is considered separately, with the evidence viewed in favor of the nonmovant on that motion. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

**d. Permanent Injunctive Relief**

A party seeking a permanent injunction must demonstrate that: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254

F.3d 476, 482 (3d Cir. 2001). Because actual success is indispensable, failure on the underlying claims defeats the request for a permanent injunction. *See id.*

## IV. DISCUSSION

### a. Plaintiff Is Not Entitled to Relief on Its Removal Challenges

Counts I and II challenge statutory restrictions on removal of OSHRC Commissioners and ALJs. Plaintiff asks the Court to declare those protections unconstitutional and to enjoin the administrative proceeding. (Am. Compl. ¶¶ 134-158.) Defendants respond that, even if the challenged protections are constitutionally infirm, Plaintiff has not shown that those restrictions caused it any injury for which the requested relief is available. The Court agrees with Defendants on that threshold point and therefore does not decide whether any challenged removal restriction violates Article II.

#### *i. Collins and Third Circuit Precedent Require a Causal Connection Between a Removal Restriction and the Relief Sought.*

In *Collins v. Yellen*, 594 U.S. 220 (2021), the U.S. Supreme Court held that a statutory restriction on the President's authority to remove the Director of the Federal Housing Finance Agency violated the separation of powers. *Id.* at 256. But the Court rejected the proposition that every action taken by the Director was therefore void. *Id.* at 257-59. A validly appointed officer is not stripped of "the power to undertake the other responsibilities of his office" merely because Congress has restricted the President's removal power. *Id.* at 257-58, n.23. Relief instead depends on whether the unconstitutional restriction itself inflicted harm. *Id.* at 259-60.

The Third Circuit has applied that principle repeatedly. In *Consumer Financial Protection Bureau v. National Collegiate Master Student Loan Trust*, the court required a causal "link" between the challenged removal provision and the agency action at issue. 96 F.4th 599, 615 (3d Cir. 2024). In *NLRB v. Starbucks Corp.*, the court held that a challenger "must show that the

constitutional infirmity actually caused harm" and rejected as "simply speculation" the contention that an ALJ "might have altered his behavior" under closer presidential supervision. 125 F.4th 78, 88 (3d Cir. 2024).

Most recently, *Axalta Coating Systems LLC v. Federal Aviation Administration* applied the same rule to removal protections enjoyed by a federal ALJ. 144 F.4th 467, 479-80 (3d Cir. 2025). The court assumed without deciding that the removal restrictions were unconstitutional but held that the challenger was not entitled to relief because "[t]he only harm" asserted was "the fact of having been made to appear before an ALJ who benefited from allegedly unconstitutional removal protections." *Id.* at 480. Under *Collins* and *Starbucks*, that asserted harm was insufficient. *Id.* That is materially the same injury Plaintiff advances here.

*ii. Axon addresses the availability of a district-court forum, not the showing required for relief on a removal claim.*

Plaintiff attempts to distinguish these authorities because its administrative proceeding is ongoing. Relying on *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), Plaintiff argues that submission to an allegedly unconstitutional administrative tribunal is a "here-and-now injury" that cannot be repaired after the administrative proceeding ends. (Pl.'s Reply Br. at 2-3, Dkt. No. 29.)

That argument conflates two distinct questions. *Axon* addressed whether statutory review schemes for the FTC and SEC stripped federal district courts of jurisdiction over structural constitutional challenges brought before completion of agency proceedings. 598 U.S. at 180, 185-86. In explaining why eventual appellate review would not be meaningful for those structural claims, the Court observed that being subjected to proceedings before an allegedly unconstitutional decisionmaker was the asserted "here-and-now injury." *Id.* at 191. The Court did not decide the merits of the removal challenges, much less hold that the existence of an allegedly unconstitutional removal protection itself satisfies the causal-harm requirement recognized in *Collins*.

Indeed, *Axalta* was decided after *Axon* and continued to apply the *Collins* causal-harm requirement to an ALJ removal challenge. 144 F.4th at 479-80. Other courts of appeals have declined to read *Axon* as eliminating *Collins* when prospective relief is requested. *See, e.g.*, *Leachco, Inc. v. Consumer Product Safety Commission*, 103 F.4th 748, 757-58 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 1047 (2025); *Walmart Inc. v. Chief Administrative Law Judge*, 144 F.4th 1315, 1348-49 (11th Cir. 2025). Thus, *Axon* establishes that a district court may possess jurisdiction over a structural removal claim; it does not establish that the plaintiff is entitled to declaratory or injunctive relief without satisfying the remedial requirements governing that claim.

*iii. Plaintiff Has Not Identified An Injury Caused by the Challenged Removal Protections.*

The summary-judgment record contains no evidence that the President attempted to remove an OSHRC Commissioner or Judge Augustine, wished to do so but was prevented by statute, or expressed dissatisfaction with either official in connection with Plaintiff's case. Nor has Plaintiff identified any ruling, prosecutorial decision, or Commission action that changed because of a removal restriction. Its theory is instead that the mere existence of tenure protection necessarily affects how rational agency officials behave and therefore inflicts an ongoing structural injury. (Pl.'s Reply Br. at 2-3.) *Starbucks* rejected materially the same theory as speculative. 125 F.4th at 88. *Axalta* likewise held that the bare fact of appearing before an ALJ with allegedly unlawful removal protection does not supply a basis for relief. 144 F.4th at 480.

Plaintiff emphasizes that *Collins*, *Starbucks*, and *Axalta* involved challenges to agency actions that had already occurred. That distinction does not alter the dispositive point. The defect alleged in a removal claim concerns the President's ability to remove an otherwise lawfully serving officer. Unless the restriction on that ability causes some cognizable consequence to the litigant, invalidating or enjoining the officer's otherwise lawful actions would provide relief for a

constitutional defect that did not affect the litigant's case. *Collins* expressly rejected that automatic-relief theory. 594 U.S. at 257-60. And the record here provides no nonspeculative basis for concluding that the challenged removal provisions have altered, or imminently will alter, the adjudication of Plaintiff's citations.

Accordingly, Plaintiff has not established an entitlement to declaratory or injunctive relief based on the removal protections challenged in Counts I and II. The Court therefore need not, and does not, determine whether the statutory removal protections for OSHRC Commissioners or ALJs violate Article II. Defendants are entitled to judgment on those portions of Counts I and II.

**b. Plaintiff Has Not Shown That Judge Augustine Is Serving Under an Unremedied Appointment Defect.**

Count II also alleges that OSHRC ALJs are appointed in violation of the Appointments Clause. Plaintiff argues that OSHRC ALJs are inferior Officers of the United States, that 29 U.S.C. § 661(e) vests appointment authority in the OSHRC Chairperson, and that the Chairperson is not the President, a Court of Law, or the Head of a Department. (Am. Compl. ¶¶ 147-158; Pl.'s Opening Br. at 8-14, Dkt. No. 27.) Defendants do not materially dispute that OSHRC ALJs are inferior officers. The dispute centers on whether the statutory appointment mechanism and the Commission's 2019 ratification satisfy Article II.

The Court need not decide whether an appointment by the Chairperson acting alone would satisfy the Appointments Clause. It is undisputed that the full Commission ratified Judge Augustine's appointment in 2019, years before OSHA inspected Plaintiff and before Judge Augustine was assigned to this proceeding. (SUMF ¶ 9; RUMF ¶ 9; Brigham Decl. Ex. 2.) Thus, even assuming that Judge Augustine's original appointment was constitutionally deficient, Plaintiff can prevail only if the Commission's ratification failed to cure that defect.

*i. The OSH Act permits Commission action ratifying an ALJ appointment.*

Plaintiff first argues that the full Commission lacked statutory authority to ratify an ALJ appointment because § 661(e) assigns appointment responsibility to the Chairperson. But statutory text must be read as a whole. Section 661(e) provides that the Chairperson "shall appoint such administrative law judges and other employees as he deems necessary to assist in the performance of the Commission's functions." Section 661(f), however, provides that "official action can be taken only on the affirmative vote of at least two members," and § 661(j) expressly refers to "[a]n administrative law judge appointed by the Commission." 29 U.S.C. § 661(e), (f), (j).

Reading those provisions together, § 661(e) assigns the Chairperson responsibility for the ordinary administration of personnel appointments; it does not prohibit the Commission itself from taking official action approving or ratifying an ALJ appointment. A contrary reading would be difficult to reconcile with Congress's express reference in § 661(j) to ALJs "appointed by the Commission." The Commission therefore acted within the statutory structure when, through a memorandum signed by all three then-serving Commissioners, it ratified the appointments of its ALJs in 2019. (Brigham Decl. Ex. 2.)

*ii. The Full Commission is a Constitutionally Permissible Appointing Authority, and Ratification before Any Action in this Case Cured Any Earlier Defect.*

The Appointments Clause permits Congress to vest appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. *Free Enterprise Fund v. Public Company Accounting Oversight Board* held that a freestanding executive agency may constitute a "Department" and that, for a multimember commission whose powers are vested collectively, the commissioners collectively serve as the Department's "Head." 561 U.S. 477, 510-13 (2010). The Court specifically explained that the SEC Commissioners

collectively were the Head of their Department and noted that their approval of Board appointments satisfied the Appointments Clause. *Id.* at 512-13, n.13.

OSHRC is likewise a freestanding federal agency created by Congress rather than a subordinate office within the Department of Labor. *See* 29 U.S.C. § 661; *Martin*, 499 U.S. at 147, 151. And the OSH Act vests official Commission action in the members collectively. 29 U.S.C. § 661(f). The Sixth Circuit applied *Free Enterprise Fund* to the structurally analogous Federal Mine Safety and Health Review Commission, observing that the Mine Commission is a "Department" and that its Commissioners collectively serve as its "Head." *Jones Bros., Inc. v. Secretary of Labor*, 898 F.3d 669, 679 (6th Cir. 2018). The same reasoning applies to the full OSHRC Commission for the limited purpose relevant here.

Ratification by a constitutionally competent appointing authority may cure an earlier Appointments Clause defect so long as the ratification occurs before the officer takes the challenged action. *See K & R Contractors, LLC v. Keene*, 86 F.4th 135, 143-44 (4th Cir. 2023) (holding that Secretary of Labor's express ratification cured any defect in ALJ's original hiring before the ALJ took action in the case). Here, the Commission's ratification occurred in March 2019. OSHA did not inspect Plaintiff until July 2023, and the administrative complaint followed in 2024. Judge Augustine therefore took no action in Plaintiff's matter before the ratification.

Plaintiff relies on *Lucia*, but *Lucia* does not require a different result. There, the SEC ALJ who adjudicated the petitioner's case had been appointed by Commission staff rather than the Commission itself, and the Supreme Court held that a party who timely challenges an adjudication by an improperly appointed officer is entitled to a new hearing before a constitutionally appointed official. 585 U.S. at 241, 251-52. Nothing in *Lucia* suggests that an earlier appointment defect

remains incurable after a valid appointing authority ratifies the officer's appointment and before the officer acts in the challenger's case. *See K & R Contractors*, 86 F.4th at 143-44.

Even if the Court assumes, without deciding, that appointment by the OSHRC Chairperson acting alone would be constitutionally defective, any such defect was cured as to Judge Augustine when the full Commission ratified his appointment in 2019, before he exercised authority over Plaintiff. Therefore, Plaintiff has not shown that it is subjected to adjudication by an improperly appointed officer. Accordingly, Defendants are entitled to judgment on the appointment component of Count II.

**c. The OSH Act's Review Scheme Channels Plaintiff's Seventh Amendment and Article III Claim.**

Count III alleges that adjudication of the OSHA citations and civil penalties by an administrative tribunal violates Article III and Plaintiff's Seventh Amendment right to a jury trial. (Am. Compl. ¶¶ 159-176.) Defendants contend that the Court lacks subject-matter jurisdiction over that claim because Congress provided a comprehensive path for administrative adjudication followed by judicial review in a court of appeals. The Court agrees and therefore does not reach the merits of Plaintiff's Seventh Amendment or Article III theory.

*i. Thunder Basin and Axon govern whether the statutory review scheme precludes district-court jurisdiction.*

Congress may implicitly preclude district-court jurisdiction by creating a special statutory review scheme. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). The analysis asks first whether congressional intent to channel review through the statutory scheme is "fairly discernible" from the statute's text, structure, and purpose. *Id.* If so, courts then consider whether the particular claims are of the type Congress intended to be reviewed within that statutory structure. *Free Enterprise Fund*, 561 U.S. at 489. The Supreme Court has identified three

considerations relevant to the second inquiry: whether precluding district-court jurisdiction would foreclose all meaningful judicial review; whether the claim is wholly collateral to the statutory review provisions; and whether the claim falls outside the agency's expertise. *Axon*, 598 U.S. at 186; *Thunder Basin*, 510 U.S. at 212-13.

The OSH Act reflects a fairly discernible intent to channel challenges to contested citations through OSHRC and then to the courts of appeals. A timely notice of contest triggers an administrative hearing and Commission order. 29 U.S.C. § 659(c). An adversely affected party then may obtain judicial review of the final Commission order in the appropriate court of appeals, which may review legal questions and set aside unsupported findings. *Id.* § 660(a). That is substantially the same type of integrated administrative-and-appellate scheme the Supreme Court has repeatedly treated as exclusive. *See Thunder Basin*, 510 U.S. at 207-09; *Elgin v. Department of Treasury*, 567 U.S. 1, 10-13 (2012).

*ii. The Thunder Basin considerations favor channeling Count III through the statutory scheme.*

First, channeling does not foreclose meaningful judicial review of Plaintiff's jury-trial and Article III arguments. If OSHRC ultimately affirms the citations and penalties, Plaintiff may petition the Third Circuit for review and present its constitutional objections there. 29 U.S.C. § 660(a). A court of appeals is fully competent to decide those constitutional questions and, if Plaintiff prevails, to vacate the Commission's order. *See Elgin*, 567 U.S. at 17. Unlike the structural claims in *Axon*, the injury asserted in Count III is not simply exposure to an official whose very authority to adjudicate is challenged based on how that official is appointed or removable. It is the use of an administrative, nonjury forum to determine the substantive OSHA liability and penalties at issue. That objection can be addressed on review of a final order before any administrative penalty becomes unreviewably fixed.

Second, the claim is not wholly collateral to the OSH Act's review process. Plaintiff's Seventh Amendment theory asks what tribunal and factfinder may adjudicate the very OSHA violations and penalties that are the subject of the administrative case. It is therefore intertwined with the enforcement proceeding rather than collateral to it. *Axon* distinguished structural claims challenging an agency's "power to proceed at all" from claims concerning "actions taken in the agency proceedings." 598 U.S. at 192. Count III is tied directly to the manner in which liability on the citations will be adjudicated.

Third, the constitutional issue itself lies outside OSHRC's specialized expertise. That factor favors Plaintiff. But the *Thunder Basin* considerations need not all point in one direction, *Axon*, 598 U.S. at 186, and the availability of meaningful appellate review together with the claim's close connection to the underlying enforcement matter weigh more heavily here. The Commission's consideration of the citations may also narrow or eliminate the need for constitutional adjudication if some or all citations are vacated on nonconstitutional grounds. That possibility further supports allowing the prescribed administrative process to run its course. *See Thunder Basin*, 510 U.S. at 214-15.[1]

Plaintiff responds that *Axon* necessarily controls because it too challenges the agency's "power to proceed." (Pl.'s Reply Br. at 8-9.) But *Axon* did not announce a categorical rule that every constitutional objection to an administrative adjudication may be litigated immediately in district court. Its holding was tied to structural challenges concerning the composition and removal protection of the adjudicators themselves. 598 U.S. at 189-95. Treating any forum-related

---

[1] Several courts applying *Axon* have reached the same conclusion with respect to Seventh Amendment challenges to ongoing administrative enforcement proceedings. *See Nexstar Media, Inc. Group v. NLRB*, 746 F. Supp. 3d 464, 470-73 (N.D. Ohio 2024); *Blankenship v. FINRA*, No. 23-4942, 2024 WL 4043442, at *2-3 (E.D. Pa. Sept. 4, 2024); *Millennia Housing Management, Ltd. v. U.S. Department of Housing & Urban Development*, 783 F. Supp. 3d 1051, 1062-63 (N.D. Ohio 2025). Although those decisions are not binding, their distinction between the structural claims in *Axon* and claims asserting a right to a jury in the underlying enforcement action is persuasive.

constitutional defense as an *Axon* claim would substantially erase the channeling rule reaffirmed in *Thunder Basin* and *Elgin*.

Accordingly, the Court concludes that the OSH Act channels Count III through the administrative proceeding and subsequent court-of-appeals review. Count III will be dismissed without prejudice for lack of subject-matter jurisdiction.[2]

**d. Plaintiff's Attorney-General-Supervision Claim Fails on Nonconstitutional Grounds.**

Count IV alleges that the Solicitor of Labor is unlawfully prosecuting Plaintiff because the Attorney General is not supervising or directing the OSHRC proceeding as required, in Plaintiff's view, by 29 U.S.C. § 663. (Am. Compl. ¶¶ 177-185.) Defendants respond that § 663 creates no private right of action; that Plaintiff cannot obtain APA review because no final agency action has occurred; that Plaintiff lacks standing; and that an OSHRC adjudication is not "civil litigation" within the meaning of § 663. The Court assumes, without deciding, that the Amended Complaint adequately invokes the APA as a vehicle for Count IV. Even on that assumption, the claim is not presently reviewable because Plaintiff has not identified final agency action. Alternatively, the claim fails on the statutory merits.

*i. The ongoing OSHRC prosecution is not final agency action reviewable under the APA.*

The APA authorizes judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An agency action is final only if it: (1) "marks the consummation of the agency's decision-making process," and (2) determines rights or obligations or produces legal consequences. *Bennett v.*

---

[2] Because jurisdiction is lacking, the Court does not decide whether *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442 (1977), forecloses Plaintiff's Seventh Amendment claim or how *SEC v. Jarkesy*, 603 U.S. 109 (2024), bears on that merits question. Plaintiff remains free to preserve those arguments in the statutorily prescribed forum.

*Spear*, 520 U.S. 154, 177-78 (1997); *Logic Technology Development LLC v. FDA*, 84 F.4th 537, 551 (3d Cir. 2023), *cert. denied*, 145 S. Ct. 1921 (2025).

The Solicitor's prosecution of a contested citation before OSHRC does not satisfy those requirements. The proceeding remains ongoing. No ALJ decision has become a final Commission order, and no final determination has been made whether Plaintiff violated the cited standards or owes any penalty. Under § 661(j), an ALJ's report becomes final only after issuance and expiration of the statutory review period absent Commission review. Therefore, the prosecution does not mark the consummation of the agency process; it is the process.

*FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980), is instructive. The Supreme Court held that the FTC's issuance of an administrative complaint was not final agency action because it was not a definitive determination of liability and had no legal force or practical effect beyond the burdens associated with defending substantial litigation. *Id.* at 239-43. The same is true here. The Secretary's decision to pursue the citations requires Plaintiff to participate in administrative litigation, but the eventual legal consequences depend on the Commission's adjudication and remain subject to judicial review under 29 U.S.C. § 660(a).

Plaintiff's theory that the Attorney General should have supervised the prosecution does not transform the ongoing proceeding into final agency action. A party cannot create finality by isolating one alleged procedural defect in a still-pending enforcement process. *See Standard Oil*, 449 U.S. at 241-43. Because there is no final agency action, the APA does not authorize the present challenge. Accordingly, Count IV fails for that reason alone.

*ii. Alternatively, an OSHRC contested-citation proceeding is not "civil litigation" within § 663.*

Even if APA review were presently available, Plaintiff's interpretation of § 663 is unpersuasive. Section 663 provides: "Except as provided in section 518(a) of title 28, relating to

litigation before the Supreme Court, the Solicitor of Labor may appear for and represent the Secretary in any civil litigation brought under this chapter but all such litigation shall be subject to the direction and control of the Attorney General." 29 U.S.C. § 663. Plaintiff reasons that because the administrative proceeding seeks "civil penalties," it necessarily constitutes "civil litigation." (Pl.'s Reply Br. at 12.) But the nature of a sanction and the forum in which it is imposed are distinct concepts.

The OSH Act itself distinguishes administrative adjudication from judicial litigation. Sections 659(c) and 661(j) govern hearings and decisions before the Commission. Section 660 separately governs judicial review and enforcement in the courts of appeals. And § 663 concerns who may "appear for and represent the Secretary" in "civil litigation," subject to the Attorney General's direction and control. In that statutory context, "civil litigation" is most naturally understood to refer to litigation in court, not the administrative adjudication that precedes judicial review.

Binding Third Circuit precedent reinforces that interpretation. In *Sun Petroleum*, the court considered whether OSHRC could independently participate in appellate litigation concerning its decisions. 622 F.2d at 1181-84. After emphasizing the division between OSHRC's adjudicative function and the Secretary's enforcement role, the court explained that the OSH Act grants the Secretary exclusive authority to enforce Commission decisions "in the courts of appeals," and immediately added that § 663 authorizes "only the Secretary to conduct OSHA civil litigation, subject to the direction and control of the Attorney General." *Id.* at 1184. The court then concluded that the Commission had no authority to appear independently "in judicial review procedures before this court." *Id.* In context, *Sun Petroleum* uses "civil litigation" to describe judicial proceedings, not the antecedent OSHRC adjudication.

Plaintiff's reliance on the phrase "civil penalties" in § 666 does not overcome that structure. Congress commonly authorizes administrative agencies to assess civil penalties through administrative proceedings while separately referring to civil actions or litigation in federal court. The word "civil" distinguishes a noncriminal penalty; it does not dictate that every proceeding concerning that penalty is itself "civil litigation" within a separate statute. Accordingly, § 663 does not require Attorney General supervision of the Solicitor's presentation of the Secretary's case before OSHRC.

*iii. In any event, "subject to the direction and control" does not require active Attorney General participation in every case.*

Count IV would fail for an additional reason even if § 663 extended to OSHRC proceedings. The statute says covered litigation is "subject to the direction and control of the Attorney General." 29 U.S.C. § 663. It does not say that the Attorney General must personally direct, actively supervise, or participate in every matter. "Subject to" ordinarily denotes superior authority that *may* be exercised, not a command that such authority *must* be exercised affirmatively in each case.[3]

Here, the undisputed record establishes only that the Attorney General is not supervising or directing the particular prosecution against Plaintiff. (RUMF ¶ 15.) It does not establish that the Attorney General has been deprived of legal authority to direct or control litigation covered by § 663. Thus, even accepting Plaintiff's broader reading of "civil litigation," the absence of active Attorney General participation in this case does not establish a violation of the statutory text.

[3] Notably, *Lowell Sun Co. v. Fleming*, 120 F.2d 213 (1st Cir. 1941), construed materially identical language in the Fair Labor Standards Act. The statute there permitted Labor Department attorneys to represent the Administrator in litigation but made "all such litigation" subject to the Attorney General's direction and control. *Id.* at 214-15. The First Circuit held that the provision was "not mandatory but permissive" because it did not require the Attorney General to exercise direction and control in every litigated case, only that he possess authority to do so when advisable. *Id.* at 215. That reasoning is persuasive here because § 663 uses the same operative formulation.

Accordingly, Defendants are entitled to judgment on Count IV. The Court need not resolve Defendants' alternative standing and agency-discretion arguments.

**e. Plaintiff Is Not Entitled to a Permanent Injunction**

Plaintiff seeks a permanent injunction preventing Defendants from continuing the OSHRC proceeding and, separately, preventing the Solicitor from prosecuting the matter without Attorney General supervision. (Am. Compl., Prayer for Relief ¶¶ 2-4.) A permanent injunction requires, first, actual success on the merits. *Shields*, 254 F.3d at 482.

Plaintiff has not established a claim warranting the requested relief. Its removal challenges fail because it has shown no injury caused by the challenged removal protections; its appointment challenge fails because Judge Augustine's appointment was ratified by the full Commission before he acted in Plaintiff's case; Count III must proceed through the OSH Act's statutory review scheme; and Count IV is not presently reviewable under the APA and fails alternatively as a matter of statutory interpretation. Therefore, Plaintiff cannot establish actual success on the merits. That failure is sufficient to deny permanent injunctive relief. *See id.*

The remaining equitable considerations do not alter that result. The ordinary costs and burdens of defending an administrative enforcement action do not, standing alone, establish irreparable injury warranting interruption of the congressionally prescribed review process. *See Standard Oil*, 449 U.S. at 244. And the Government and the public possess a legitimate interest in adjudication and enforcement of federal workplace-safety standards through the process Congress established. Because Plaintiff has not established a legal entitlement to halt that process, the request for a permanent injunction will be denied.

## V. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 27) is **DENIED**, and Defendants' Cross-Motion to Dismiss and/or for Summary Judgment (Dkt. No. 28) is **GRANTED**. The Court will enter judgment for Defendants on Counts I, II, and IV. Count III is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. Plaintiff's request for permanent injunctive relief is **DENIED**.

An Order consistent with this Opinion will be entered.

November 5, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE